IN   THE   UNITED   STATES   DISTRICT   COURT

FOR   THE

NORTHERN   DISTRICT   OF   CALIFORNIA

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Billy G. Asemani
ECI-E/#339096
30420 Revells Neck Road
Westover, MD  21890

(Plaintiff, pro se)

v.

The Islamic Republic of Iran
Interests Section of Iran
1250 23rd Street, N.W./#200
Washington, D.C.  20037

(Defendant)

**FILED**

JAN 17 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Civil Action No.:

**CV 18     0368 DMR**

**(PR)**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PRO   SE   COMPLAINT
PURSUANT   TO
TITLE   28   U.S.C.   § 1330
("ACTIONS   AGAINST   FOREIGN   STATES"),
TITLE   28   U.S.C.   § 1602   et seq
(THE   FOREIGN   SOVEREIGN   IMMUNITIES   ACT),
TITLE   28   U.S.C.   § 1738
(THE   FULL   FAITH   AND   CREDIT   ACT),
AND,
IN   ACCORDANCE   WITH
THE   FEDERAL   RULES   OF   CIVIL   PROCEDURE;
Nos.:   44(a)(1),   &   (55)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

THE   COMPLAINT'S   SOLE   COUNT:

"ACTION   OF   DEBT"   ON   A   STATE-COURT   JUDGMENT

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

RELIEF   SOUGHT

ENTRY   OF   A   FINAL   DEFAULT   JUDGMENT

AGAINST   DEFENDANT   IRAN

TABLE OF CONTENTS

---------------------------------------------------------------------

Page(s)

PRO SE PLAINTIFF'S DECLARATION &
SWORN AFFIDAVIT ———————————————————————————— 1

PRELIMINARY STATEMENT ON PLAINTIFF
ASEMANI'S PRO SE STATUS —————————————————————— 2-3

SUFFICIENCY OF THE COMPLAINT——————————————————— 4-5

NATURE OF THE ACTION——————————————————————————— 6

JURISDICTION & VENUE ——————————————————————————— 7

COUNT I:
ACTION ON A STATE-COURT JUDGMENT————————————————— 8

ASEMANI'S "ARTICLE III STANDING"
IN BRINGING THIS ACTION—————————————————————————— 9

THE COMPLAINT'S FACTUAL BACKGROUND
AND PROCEDURAL HISTORY————————————————————————— 10

THE COMPLAINT'S LEGAL BASIS &
DISCUSSION ON THE COURT'S JURISDICTION———————————— 11-18

NINTH CIRCUIT CASE-LAW AUTHORITIES;
RELEVANT/APPLICABLE TO THE CASE SUB JUDICE——————————— 19-21

VENUE CONSIDERATIONS————————————————————————————— 22-27

RELIEF SOUGHT—————————————————————————————————————— 28

ii

PRO  SE  PLAINTIFF'S  DECLARATION
&
SWORN  AFFIDAVIT

------------------------------------------------------------------

I, Billy G. Asemani, the affiant herein, swear, affirm, and certify,

under oath, and under the penalties of perjury, that all the statements

in this Complaint are true, to the best of my knowledge, and that all the

attached exhibits and documentation are true copies of the originals.

_____          01/02/18

Billy G. Asemani                         Date:


See  A.C.C.L. v. Russian Federation, 729 F.Supp.2d 141 (D.D.C. 2010):

"[A] plaintiff may establish proof by AFFIDAVIT.  [T]he court may

accept plaintiff's uncontroverted evidence as true."


See also  Livant v. The Palestinian Authority,

82 F.Supp.3d 19 (D.D.C. 2005):


"[T]he plaintiff is not required to adduce evidence that meets the

standards of admissibility reserved for summary judgment and trial,

but rather, the plaintiffs may rest their arguments on the pleadings,

bolstered by such AFFIDAVITS and other written materials as they can

otherwise obtain."


(Emphasis added.)(Internal quotations/citations omitted.)


1

PRELIMINARY STATEMENT ON PLAINTIFF ASEMANI'S PRO SE STATUS
------------------------------------------------------------------

The U.S. Supreme Court has only required that this Complaint include
"a short and plain statement of the claim showing [an] entitlement
to relief." See Leatherman v. Terrant..., 507 U.S. 163 (1993).
Plaintiff Asemani, therefore, will not set out, in full detail,
all the facts upon which he bases his claims. His Complaint,
however, gives Defendant Iran a fair and reasonable notice of
what the claims are and the grounds upon which they rest.

Furthermore, Asemani respectfully requests of the Honorable Court to
construe his Complaint liberally, and to cure all procedural defects/
errors as adjudged in Haines v. Kerner, 404 U.S. 519 (1972);
see also Love v. Pullman Co., 404 U.S. 522 (1972): "Technicalities
are particularly inappropriate in a statutory scheme in which laymen,
unassiated by trained lawyers, initiate the process." Id.

In Haines, supra, the High Court unanimously held that a pro se complaint,
"however inartfully pleaded," can only be dismissed if it appears
"beyond doubt that plaintiff can prove no set of facts in support of
his claim which would entitle him to relief." Id. Asemani also urges
the Court to apply the standards in Buros v. Hopkins, 4 F.3d 787 (2nd
Cir. 1994): "Pro se papers should be interpreted to raise the
strongest argument that they suggest[.]" Id.

2

"Pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers." See Estelle v. Gamble, 429 U.S. 97 (1976): "The pro se litigant is far more prone to making errors in pleading than the person who benefits from counsel, and needs assistance in navigating through the process." See Noll v. Carlson, 809 F.2d 1448 (9th Cir. 1987); see also Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989); Hebbe v. Pliter, 627 F.3d 338 (9th Cir. 2002): "Prisoners proceeding pro se [] are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor."

Federal courts have long recognized that they have an "obligation to construe pro se filings liberally." See Toolasprashad v. B.O.B., 286 F.3d 576 (D.C. Cir. 2002). As such, Asemani pleads with the Honorable Court to "view [] his complaint through the forgiving lens applicable to pro se pleadings[.]" See Mitchell v. B.O.P., 587 F.3d 415 (D.C. Cir. 2009).

In Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court emphasized that "even if general allegations are not supported with specific facts, a pleading should be deemed sufficient if it provides reasonable notice to the theories presented. The lenity in pleading review is especially important as applied to an indigent incarcerated pro se litigant whose access to the courts is narrowly circumscribed." See also Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990): "[C]ourts traditionally view [pro se] compliants with special judicial solicitude."

3

'[A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong theory as a basis for that claim, as long as relief is possible under any set of facts that could be established with the allegations." See Gonzalez-Perez v. Hospital..., 355 F.3d 1 (1st Cir. 2004); see also Simpson v. Nickel, 450 F.3d 303 (7th Cir. 2006): "Facts need not be established or even alleged (fact-pleading is unnecessary); a plaintiff receives the benefit of any fact that could be established later consistent with the complaint's allegations."

See also Zaidi v. U.S., 115 F.Supp.3d 80 (D.D.C. 2015): "[P]ro se complaints are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact. In evaluating subject-matter jurisdiction, the court is not limited to the allegations contained in the complaint, but rather may consider extra-pleading materials."

See also Falck v. IRS, 2007 U.S. Dist. LEXIS 42729: "Because the pleadings of pro se plaintiffs must be construed liberally, the court would construe the complaint to include three additional claims."

(Internal quotations/citations omitted.)

5

## JURISDICTION
### &
### VENUE

------------------------------------------------------------

This federal action is to enforce a state-court judgment, which finally
resolved Asemani's claims against Iran, for damages he suffered as a
result of the extrajudicial torture that Defendant Iran inflicted on him.
In that action, the state-court had jurisdiction over the subject-matter
under the FSIA.  Pursuant to the provisions of Title 28 U.S.C. § 1602
et seq, Iran was, and is, subject to suit in a court of competent
jurisdiction in any state-court in the United States.

This Court has subject-matter jurisdiction over this action pursuant to
Title 28 U.S.C. § 1330(a), as this is a non-jury civil action against a
foreign state.  Iran is not entitled to immunity from this action under
the applicable FSIA provisions, because the state-court judgment was
rendered as a consequence of Asemani's torture by Defendant Iran.

Personal jurisdiction exists over Iran pursuant to Title 28 U.S.C.
§ 1602 et seq, and Title 28 U.S.C. § 1330(b).

Venue is appropriate in this District.  (Please see a comprehensive
discussion on "Venue Considerations" contained in the
instant Complaint.)

Further elaborations on the Court's jurisdiction are also
detailed in the follow-up segments of the present Complaint.

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature

DOC #

## COUNT I

### ACTION  ON  A  STATE-COURT  JUDGMENT

------------------------------------------------------------------

A copy of the state-court judgment (which is the subject of this federal action) is attached hereto as <u>Exhibit 1</u>.  (Asemani is in the process of obtaining a certified copy of the same, which will be, later-on, forwarded to the Court.)

Said judgment is a final disposition of Asemani's claims against Defendant Iran.  The Defendant has failed to make any payments to Asemani pursuant to the $4 million judgment, which, consequently, remains unsatisfied in its entirety.

In order to seek recovery of what is owed to Asemani by Iran, he hereby brings this action to enforce said judgment, upon which he may execute in this or another federal district court of the U.S., against Iran and against any of its assets wherever situated.

Defendant Iran may not raise any defenses to the underlying judgment, as to the merits of that suit.  The state-court possessed proper jurisdiction over the matter, and this Court should properly enforce the state-court judgment.  Asemani is entitled to a final default judgment from this Court based on Iran's failure to satisfy any part of the $4 million judgment against it.

8

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

ASEMANI'S "ARTICLE III STANDING" IN BRINGING THIS ACTION

--------------------------------------------------------------------------

In <u>Warth v. Seldin</u>, 422 U.S. 490 (1975), the U.S. Supreme Court
provided that "the irreducible constitutional minimum of standing contains three
elements. First, the plaintiff must have suffered an injury in fact[;
s]econd, there must be a causal connection between the injury and the
conduct complained of[; and t]hird, it must be likely, as opposed to
merely speculative, that the injury will be redressed by a favorable decision."
Asemani, clearly, meets all three elements of "standing," for Iran's
act of torture on him qualifies as an "injury in fact;" "the causal
connection between the injur[ies]" he sustained and Defendant Iran has
been established by way of the state-court judgment against Iran; and,
such remedy (the $4 million judgment) "will be redressed by a favorable
decision" by this Court. Because, in that event, Asemani will be able
to enforce and satisfy the outstanding judgment, at least, in part.

See also  <u>Bennett v. Spear</u>, 520 U.S. 154 (1997):  "In addition to the
immutable requirements of Article III, the federal judiciary has also
adhered to a set of prudential principles that bear on the question of
standing.[  The requirement is] that a plaintiff's grievance must
arguably fall within the zone of interests protected or regulated by the
statutory provision or constitutional guarantee invoked in the suit." <u>Id</u>.

Among other governing statutes, the required "statutory provision []
invoked" here, is the Full Faith and Credit Act, which
grants Asemani "standing" to pursue his claims in this Court.

**Part A (Continued) – REASON FOR APPEAL**

_____ Inmates Name: Print and Signature _____ DOC#

Date _____

THE COMPLAINT'S FACTUAL BACKGROUND AND PROCEDURAL HISTORY

----------------------------------------------------------------

A year-and-a-half ago (on July 25, 2016), Asemani was awarded
$4,000,000.00, in a FSIA action against Iran, which was brought
in state-court; see Exhibit 1.

As Exhibit 1 evidences, Defendant Iran was served with a copy of the
$4 million judgment, directly by the Clerk of the state-court.
Subsequent to Iran's non-responsiveness to the same, on March 23,
2017, the case's disposition was ordered by said court.
As such, the matter was closed as of thet date.

Asemani, to date, has not received any payments from Defendant Iran,
despite Iran's full knowledge, notice, and awareness of the
judgment against it.

The state-court case was commenced in 2010.  Defendant Iran was kept
abreast of all the developments, proceedings, events, etc., related to
the case.  Iran was also provided/served with all the court orders
in that matter during the entire 6 years that it took for
Asemani's claims to be adjudicated.

As it is Iran's common practice in similar FSIA actions, it has never
bothered to respond, nor has Iran entered an appearance in the
state-court case.  No appeal of the $4 million award has been
filed with any court since its 7/25/16 issuance.

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

## THE COMPLAINT'S LEGAL BASIS
### &
## DISCUSSION ON THE COURT'S JURISDICTION

Pro se Plaintiff Asemani hereby provides the Honorable Court with the legal authority concerning the Court's jurisdiction, and its inherent power, to enter a final default judgment in this action, which is based on a case involving a judgment that has already been issued by a state-court.

This segment of the Complaint furnishes the legal basis/theory for filing a new lawsuit in federal court based on a state-court judgment, rather than simply filing a record of the judgment in aid of execution of a lien on the Iranian government funds that have been located in this federal district. (See "Venue Considerations" section, infra.)

See also  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75 (1984): "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."

Relatedly, in The President & Directors... v. Dalton, 13 L.Ed. 242, the following transpired: "This ACTION OF DEBT was brought by the plaintiff to recover of the defendant the sum of $1,844 debt, and $110.58 damages, [awarded] in the Circuit Court of Tuscaloosa County[;] State of Alabama[,] by the plaintiff[.] ........

11

**~~Part A (Continued) – REASON FOR APPEAL~~**

~~Date~~

~~Inmates Name: Print and Signature DOC #~~

"[T]he judgment of another State shall be record evidence of the
demand, and that the defendant, WHEN SUED ON THE JUDGMENT[,] that []
is evidence of an established demand, which, standing alone, is
conclusive between the parties to it." Id.  (Emphasis added.)

The FSIA statutes form the premise for the Court's § 1330 jurisdiction.
In this "action of debt," Iran is being "sued on the judgment."
Moreover, supplemental jurisdiction is further provided by Title
28 U.S.C. § 1738, the Full Faith and Credit Act.

In Amin v. Suthikant, 1995 WL 781142 (W.D. Mo. Nov. 22, 21995),
a comparable set of circumstances presented themselves (where a new
federal complaint was filed, while the plaintiff already had a state-
court judgment in hand).  The Amin court was satisfied that
it enjoyed subject-matter jurisdiction and authority to take
the case and to, ultimately, issue a federal judgment.

See also  Weininger v. Castro, 462 F.Supp.2d 457 (S.D.N.Y. 2006):
"[B]y Order dated December 13, 2005, this Court granted Weininger's
motion for summary judgment IN LIEU OF complaint domnsticating the
Florida [state-court] judgment, including all of the findings of fact and
conclusions of law therein.[] is entitled to full faith and credit in
New York and direct[ed] the Clerk of Court to enter judgment as provided
in the Florida judgment.[] This Court [has] granted summary judgment
IN LIEU OF complaint recognizing the Florida judgment[.] Id.
(Emphasis added.)

12

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

The basis of Asemani's underlying state-court claim, repeated here in this case, is the extrajudicial torture that he sustained by Defendant Iran, a terrorist act which has excluded Iran from sovereign immunity; See  Title 28 U.S.C. § 1602 et seq.  As such, a court of law has already, conclusively, determined that Iran is liable to Asemani and it has also determined the amount of damages to be awarded in his favor.  In this federal district, Asemani is seeking the enforcement of said judgment.

See  Express v. Blagojevich, 638 F.3d 519 (7th Cir. 2011): "Federal courts must give state-court judgments the same preclusive effect they would have in state court."  See also  R&B Group v. BCI, 982 F.Supp. 549(N.D. Ill. 1997): "The default judgment in the Wisconsin [state-court] litigation is res judicata in the Federal Litigation."

The federal action at hand has become necessary because Iran has failed to satisfy any part of its obligation to honor the state-court's $4M judgment.  Obviously, the simplest resolution to this case would be Iran's compliance with said judgment.  Asemani, therefore, has brought the instant action on the state-court judgment to seek this Court's assistance for the purpose of an eventual execution on the $4M award.

As explained more thoroughly below, Asemani has the right to pursue the enforcement of the state-court judgment in federal court.

13

~~Part A (Continued) – REASON FOR APPEAL~~

~~Date~~

~~Inmates Name: Print and Signature~~ ~~DOC #~~

As this Court has the jurisdiction and the authority to address the claim(s) that are articulated in this Complaint, it therefore has the power to enter a final default judgment in Asemani's favor against Iran. The Court's jurisdiction can be addressed in a very succinct manner; it begins with Title 28 U.S.C. § 1330, which (specifically, §1330(a)) provides:

"The district courts have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this Title to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this Title or under any applicable international agreement."  Id.

As for the authority of this Court to issue a judgment against Iran to satisfy the state-court judgment, the legal basis is premised on a logical progression of the legal elements necessary to pursue an action on a state-court judgment, keeping in mind the concept of full faith and credit to which state-court judgments are entitled.

To begin with, it should be noted that it is beyond doubt that a cause of action exists for a judgment-creditor (like Asemani) to sue a judgment-debtor (such as Iran) based on non-payment of a judgment, meaning that a plaintiff can take a prior judgment from one court and thereafter file an action in a second court based on the non-payment of the judgment in question.

There is nothing unusual about a plaintiff taking a state-court judgment that has not been satisfied by a defendant and thereafter filing a claim in federal court to obtain a federal judgment for purposes of the enfocement of the original award.

14

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

See, e.g. AMEC Distribution Corp. v. Harrelson, 842 F.2d 304
(11th Cir. 1988)(affirming summary judgment granted by federal district
court on plaintiff's action based on Texas state-court judgment).
See also  Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 15
(5th Cir. 1974)(affirming judgment by Alabama federal court based on
Maryland state-court judgment); North Carolina National Bank v. Marden,
561 F.Supp. 698 (W.D.N.C. 1983)(granting summary judgment for plaintiff
on action to enforce North Calorina state-court judgment); Washington
Gas Light Co. v. Hsa, 478 F.Supp. 1262 (D.Md. 1979)(granting judgment on
pleadings in favor of plaintiff bringing action on unpaid state-court judgment).

It is well-established that, in essence, the elements of an action on
a judgment are that there is an outstanding judgment and that the
defendant has not paid the judgment.  Both such elements, in Asemani's
situation, are present here for the purpose  of the Court's
imposition of its jurisdiction over this matter.

Numerous courts have explained the process in terms of the federal
full faith and credit statute, confirming that federal courts indeed
have the authority to hear claims based on unsatisfied state-court
judgments.  See, e.g., Berke v. Northcutt, 1986 WL 17153 (6th
Cir. 1986);

See also  Amin, supra; First of Denver Mortgage Investors v. Riggs,
564 F.Supp. 1513 (D. Colo. 1983).

15

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

Such authorities should conclusively satisfy any concerns the Court may have as to whether a federal action to sue on a state-court judgment is out of the ordinary.  To the contrary, it is a relatively normal and acceptable proceeding.

In Amin, supra, the district court noted that "[o]nce jurisdiction has been established[,] the most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose."

In that case, the plaintiff had brought an action in a Missouri federal court based on a judgment from an Illinois state-court.  The federal court there entered judgment in favor of the plaintiff since it was established that the plaintiff had obtained a judgment against the defendant in state-court and that the defendant had paid nothing on the state-court judgment.

Similarly, Berke, supra, involved a scenario in which a plaintiff had brought an action on a Tennessee state-court judgment in federal court.  In that case, the federal district court had dismissed the complaint based, in part, on its holding that the case had already been decided by a state-court and the judgment "does not need to be federalized here."  See Berke, 1986 WL 17153, at *1.

The Sixth Circuit reversed the district court, by noting that ........

16

**Part A (Continued) – REASON FOR APPEAL**

Date

Inmates Name: Print and Signature DOC #

"Plaintiff alleges that he has a judgment and that defendant has
failed to pay on the judgment[, and that] several federal courts,
adhering to 28 U.S.C. § 1738, have adjudicated actions seeking
enforcement of a state court judgment." Id., at *2.  (Citing seven
cases and also noting that "a federal court must enforce a state-
court judgment when an action is brought for that purpose."

The Sixth Circuit went on to say that "it has not been considered a bar
to such an action that the federal district court in which the enforcement
is sought sits in the same state in whose courts the judgment in issue
was rendered." Id., at *2.  See also  Marden, supra.

In First Denver, supra, the Colorado federal district court denied a
motion to dismiss an action based on a Colorado state-court judgment.
Since the  plaintiff there had alleged that it possessed a valid
state-court judgment, and that it had remained unpaid,
it stated a cause of action in federal court.

In Hazen, supra, the below conclusion was made:

"Under the compulsion of this statute [§ 1738], federal courts
are required to give full effect to the final judgments of
state courts, subject only to narrowly circumscribed
avenues of collateral attack."  Id.

17

Concurring decisions were made in all of the following cases as well:

Southern Jam, Inc. v. Robinson, 675 F.2d 94 (5th Cir. 1982);
Midessa Television Co. v. Motion Pictures For Television, Inc.,
290 F.2d 203 (5th Cir. 1961); Holcomb v. Holcomb, 413 F.Supp. 402
(N.D. Okal. 1975); Valley Bak of Nevada v. Skeen, 366 F.Supp. 95
(N.D. Tex. 1973), aff'd 495 F.2d 1371 (5th Cir. 1974); Stephenson v.
Durrion, 292 F.Supp. 66 (S.D. OH 1968), aff'd 428 F.2d 387
(6th Cir. 1970).

In light of the foregoing, the Court has both the jurisdiction and
authority to decide Asemani's claims in this case.  In fact, as
the above-cited authorities indicate, if a plaintiff establishes
the elements of an action on a judgment by way of a federal judgment,
the federal court must enforce the state-court judgment.

The relief sought by Asemani in this Court is critical to his
cause, and he has every right to bring his claim to the Court.

18

NINTH  CIRCUIT  CASE-LAW  AUTHORITIES

RELEVANT /APPLICABLE  TO  THE  CASE  SUB  JUDICE

----------------------------------------------------------------

In Peterson v. Iran, 627 F.3d 1117 (9th Cir. 2010), it was held that
"after a court has determined that the sovereign is not immune from suit
and enters a judgment on the merits, ONLY THE ENFORCEMENT ACTION REMAINS.
Now, having been judged liable, the foreign state has a concrete interest
in participating to protect its interest, unlike a trial on the merits
where any liability is still speculative.

"This says nothing about whether the foreign country will choose to
assert that defense, even though our statute make it avilable.  Indeed,
it seems that addressing a defense that the foreign state has itself not
chosen to assert would undermine, not protect, the independence of
the foreign sovereign." Id. (Emphasis added.)

If upon service-of-process, in the instant action, Defendant Iran has
any contentions with respect to any aspect of Asemani's claims (choice
of venue, the Court's jurisdiction, etc.), it will have ample
opportunity to express such concerns.

See also  In re... Marcos, 910 F.Supp. 1470 (D. Hawaii 1995):
"In law settled, for more than a century, there can be no question that
a court's power to render a judgment includes the power to enforce
that judgment."  If Iran "sits out" this Complaint, the Court's
final default judgment againt it will be enforceable throughout the U.S.

_Marcus, supra_, continued ...

"[I]mplicit in THE POWER TO ENFORCE A JUDGMENT, is the power to use all legal means to provide relief to judgment creditors in an appropriate case.  Assignment of funds is one of those means."  _Id._

As it is explained in detail in the following pages, Iranian government funds that Asemani has located in this federal district will be the subject of the Court's enforcement mechanism if he is able to persuade the Court to issue the requested final default judgment against Defendant Iran,

Citing _Migra, supra_, the Ninth Circuit (in _Los Angeles... v. Los Angeles..._, 750 F.2d 731 (9th Cir. 1984)) has held that "[t]he state court court judgment in the litigation is entitled to the same preclusive effect in this court[,] whether the effect is one of claim preclusion or issue preclusion.  28 U.S.C. § 1738[.]"

Iran is forbidden from re-litigating all (or any) of the issues, that were adjudicated in the state-court case, in the course of this action.  If it enters "appearance," here, however, it may defend against the seizure of its assets that have been identified by Asemani.

Accordingly, upon the submission of this Complaint, Asemani is not
seeking the reopening of the issues that have already been decided
by the state-court.  See  Bennett v. Greenberg, 825 F.3d 950
(9th Cir. 2016): "Congress could not require federal courts to
reopen final judgments.  [H]ere, the judgment was not reopened.
Instead, the Heiser plaintiffs have a new collection tool;
they can enforce their final judgment against Iran by
attaching and executing on the property of Iran's[.]

Currently, without a final default judgment, the Court, obviously,
has no power to authorize Asemani to pursue Iran's assets in this
district.  See  Schooner Exch. v. McFaddon, 11 U.S. 116 (1812):
"The jurisdiction of the United States over persons AND PROPERTY
within its territory is susceptible of no limitation not imposed by
itself."  (Emphasis added.)(Cited in Bennett, supra.)

"Congress [has] enact[ed] new statutes,[] designed to facilitate the
satisfaction of [] judgments by expanding successful plaintiffs'
ability to attach and excute on THE PROPERTY [] of terrorist sttes."

"Although all the judgments were taken by default, it is undisputed that all
are valid final judgments and that Iran owes the amounts of those judgments
to the respective plaintiffs.[] 'Congress intended [] to make it easier for terrorism
victims to obtain judgments and to attach assets'[](citing Gates v. Syrian Arab
Republic, 755 F.3d 568 (7th Cir. 2014].[I]t is quite clear that Congress [has]
meant to expand successful plaintiffs' options for collecting judgments against
state sponsors of terrorism[;] to facilitate victims' collection of
their damages [.]"  Id., Bennett, supra.

## VENUE  CONSIDERATIONS

----------------------------------------------------------------------

Exhibit B is a list of "[f]inancial institutions holding assets
in the United States that are blocked due to a nexus with the
Government of Iran."

One such blocked asset (in the amount of $17,700,000.00,  held by
Visa International Service Association) is situated within this
Court's terriooorial jurisdiction.

It is that particular asset of Iran's (see  Exhibit B), and the Court's
immediate jurisdiction over it that has prompted the filing of this
action in this fedeeral district.

One of the most recent FSIA-related decisions, relevant here, is:
Leibovitch v. The Islamic Repunlic of Iran, 188 F.Supp.3d 734
(N.D. Ill. 2016), where it was held that "the United States []
has a strong interest in combatting terrorism and providing a remedy
for its victims."  This Court's assistance to Asemani, in pursuing
Itan's asset(s) in this district will "provid[e such] remedy."

See also  Bennett v. Iran, 817 F.3d 1131 (9th Cir. 2016):
"Congress clearly instructed courts to allow the [] blocked
assets to be reached."

22

Said list (Exhibit B) of "assets [] that are blocked" has been
provided to Asemani by the U.S. Treasury Department's Office of
Foreign Assets Control ("OFAC").  See  In re 650 Fifth Avenue,
2012 U.S. Dist. LEXIS 105188 (S.D.N.Y.): "The Office of Foreign Assets
Control[,] requires U.S. persons to block all property belonging to[]
Iran[.]  In addition, the Terrorism Risk Insurance Act of 2002 ('TRIA'),
codified in a note to the FSIA, allows a plaintiff to execute
against 'blocked' assets of a terrorist party."  Id.

See also  Bennett, supra: "[W]e agree with the Second Circuit when it
held that it is 'clear beyond cavil that Section 201(a) of the TRIA
provides courts with subject matter jurisdiction over POST-JUDGMENT
and attachment proceedings against property [] of the judgment-debtor.'"
(Citing  Weinstein v. Iran, 609 F.3d 43 (2nd Cir. 2010).(Emphasis added.)

"The FSIA provides the exclusive vehicle for subject matter jurisdiction
in all civil actions against foreign state defendants.[] FSIA's §1610(g)
allows attachment of and execution against property held by
a foreign terrorist state[.]"  Id.

It is quite possible that other assets of Iran's (blocked or not)
are also located in this district, the discovery of which will be
accommodated by means of the present Complaint.  See  Dexia v. Rogan,
629 F.3d 612 (7th Cir. 2010): "[P]ost-judgment processes [] support
the judgment creditor in asset discovery and final satisfaction of
judgment[;]"  see also  Cacok v. Covington, 111 F.3d 52 [] (7th Cir. 1997)."

In Wyatt v. Syrian Arab Republic, 800 F.3d 331 (7th Cir. 2015), it was concluded that "[o]nce plaintiffs obtain judgment under §1605A they may proceed to attach assets to execute that judgment under § 1610." Id.

In Rubin v. Iran, 830 F.3d 470 (7th Cir. 2016), "[t]he plaintiffs [like what Asemani is attempting to do] sought to execute on [Iranian Government assets] located within the territorial jurisdiction of [a federal] district[.]" See also  Gates v. Syrian Arab Republic, 755 F.3d 568 (7th Cir. 2014), where it was stated that "[u]nder the FSIA,[] plaintiffs [] have secured [] judgments against the Syrian Arab Republic, [which] remain unsatisfied[.  They] have sought to satisfy them in part by attaching Syrian assets in the [federal] district." Id.

"A foreign state's property in the United States is immune from attachment and execution (see 28 U.S.C. § 1609), but there are a few narrow exceptions[.]  TRIA[] permits holders of terrorism-related [] judgments to execute assets that are 'blocked.'"  See  Wyatt, supra.

See also  Levin v. Iran, 529 F.Supp.2d 1 (D.D.C. 2007): "The judgment awards the Levins $28,807,719.  Upon receiving this award, the Levins produced government records identifying certain assets in which Iran or its instrumentalities have an interest and that were accordingly blocked by OFAC[.]  OFAC[,] via a letter to Plaintiff[,] disclosed information regarding certain Iranian assets held in the United states pursuant to various blocking regulations." Id.

In Heft v. AAI, 355 F.Supp.2d 757 (M.D. Pa. 2005), it was held that "venue is concerned with the territorial reach of the court, not its inherent adjudicative power." Id.

Via the Full Faith and Credit Act, this Court's "territorial reach" extends to the entire United States, given the nature of the relief-sought by Asemani, even if, ultimately, no recovery is made in satisfaction of Asemani's $4M judgment from this Court.

In NML... v. Spaceport..., 788 F.Supp.2d (C.D. Ca. 2011), citing Federal Rule of Civil Procedure 64, it was stated that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person OR PROPERTY to secure satisfaction of the potential judgment." (Emphasis added.) Even "potential judgments" may trigger federal causes of action. Here, Asemani already has a judgment, which he seeks to enforce. See also Peterson, supra: "This provision [28 U.S.C. § 1610(g)(1)] expand[s] the category of foreign sovereign property that can be attached; judgment creditors can now reach any U.S. property in which Iran has any interest...whereas before they could only reach property belonging to Iran." See also Flatow v. Iran, 308 F.3d 1065 (9th Cir. 2002).

In Intel v. Advanced..., 12 F.3d 908 (9th Cir. 1993), it was held that "[t]he purpose of this [Full Faith and Credit] statute is to promote comity and federalism by [recognizing] the preclusive effect of an earlier state judgment."

Recognizing the $4M judgment that Iran is the judgment-debtor of, by means of a final default order, will facilitate Asemani's efforts to satisfy the same.

According to Title 42 U.S.C. § 10609 ("Justice for United States Victims of State Sponsored Terrorism [Act]"), a special funds has been established by Congress. See "U.S. Victims of State Sponsored Terrorism Fund." The purpose of such Fund is to compensate victims in Asemani's predicament.

As permitted by said Act, judgment-holders like Asemani may choose to pursue Iran's assets (what Asemani intends to do in this federal district, through the case at hand), or they may apply to the Fund for compensation, which Asemani may end-up doing if pursuit of Iran's assets here proves fruitless. (The main difference is that the Fund does not pay post-judgment interest that FSIA judgments accrue.)

Two relevant portions of said statute are § 10609(c)(2)(A)(i)'s requirement that "a final judgment[, be] issued by a United States district court[,]" and § 10609(j)(4), which explains that "[t]he term 'final judgment' means an enforceable final judgment, decree or order on liability and damages entered by a United States district court[.]" Id.

In Leutwyler v. Office..., 184 F.Supp.2d 277 (S.D.N.Y. 2001), it was concluded that a court "is required to take the following into account[:] [I]ssues concerning the enforceability of a judgment in a forum that is familiar with the law governing the action."

This federal district/circuit is surely familiar with FSIA cases, as illustrated supra, and the Court's issuance of a final default judgment will certainly have the enfoceability-power that Asemani needs to satisfy his $4M award.

26

In Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), it was held that venue considerations by the courts should be "[i]ndividualized, [on a] case by case [basis, after] consideration of convenience and fairness." Id. Defendant Iran will, in no way, be prejudiced by the Court's acceptance of Asemani's case in this district, for Iran is a foreign entity, "amenable to process" by any federal court in the U.S. See Gulf Oil Corp. v. Gilberty, 330 U.S. 501 (1947). See also Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir.'92): (28 U.S.C. § 1610(b) does limit the power of U.S. courts, but it does not vest in foreign sovereins the right not to pay valid judgments.)

No other forum is more preferable than this district; again, because Iran's assets are scattered all over the country, and also due to the fact that this Court has an inherent power/jurisdiction (on the strength of Title 28 U.S.C. § 1330, etc.) to resolve Asemani's claims. See Bhatnagar v. Surrendra, 52 F.3d 1220 (3rd Cir. 1995): "Since a district court [] has juridiction over the dispute, it is only when some other forum that would also have jurisdiction is better suited to adjudicate the controversy that a district court may exercise its discretion and dismiss the case."

Once service-of-process (in this case) is accomplished, Iran will have a fair and reasonable opportunity to contest Asemani's choice of venue, if it wishes to. Otherwise, "[u]nless the balance of convenience is strongly in favor of the defendant, or such balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed." See also Leung v. Nunes, 354 Md. 217 (1999), citing Title 28 U.S.C. § 1404(a).

## RELIEF  SOUGHT

-----------------------------------------------------------------------

"When it appears that a pro se plaintiff's complaint, if more carefully
drafted, might state a claim, the district court should give the pro se
plaintiff an opportunity to amend his complaint instead of dismissing it."
See  Humphry v. Sec'y, DHS, 597 F.Appx. 571 (11th Cir. 2014).

Federal Rule of Civil Procedure No. 15 ("Amended and
Supplemental Pleadings") allows for such amendments.

WHEREFORE, premises considered, and for the foregoing reasons, as
articulated throughout the Complaint, Asemani respectfully requests
of the Honorable Court to treat his Complaint liberally, and to
afford him an opportunity to cure any deficiencies that may exist
in order for the same to become a viable action.

If additional information/documentation, etc. is required by the
Court, prior to the Court's acceptance/filing of this matter,
Asemani will provide the needed material.

Date: _01/02/18_

Respectfull submitted,

Billy G. Asemani, pro se

28

appropriate under Bivens.  It does seem puzzling that Bivens liability would attach to the private individual employees of such corporations-subagents of the Federal Government-but not to the corporate agents themselves.  However, the United States explicitly maintains this to be the case, and the reasoning of the Court's opinion relies, at least in part, on the availability of a remedy against employees of private prisons. Cf. ante, at 72, 151 L Ed 2d, at 466 (noting that Meyer "found sufficient" a remedy against the individual officer, "which respondent did not timely pursue" (emphasis added)).

[7] Although the Court lightly references administrative remedies that might be available to CSC-housed inmates, these are by no means the sort of comprehensive administrative remedies previously contemplated by the Court in Bush and Schweiker.

[8] The Court blames respondent, who filed his initial complaint pro se, for the lack of state remedies in this case; according to the Court, respondent's failure to bring a negligence suit in state court was "due solely to strategic choice," ante, at 74, 151 L Ed 2d, at 468.  Such strategic behavior, generally speaking, is imaginable, but there is no basis in the case before us to charge respondent with acting strategically. Cf. ante, at 73, 151 L Ed 2d, at 466-467 (discussing how proving a federal constitutional claim would be "considerably more difficult" than proving a state negligence claim).  Respondent filed his complaint in federal court because he believed himself to have been severely maltreated while in federal custody, and he had no legal counsel to advise him to do otherwise.  Without the aid of counsel, respondent not only failed to file for state relief, but he also failed to name the particular prison guard who was responsible for his injuries, resulting in the eventual dismissal of the claims against the individual officers as time barred. Respondent may have been an unsophisticated plaintiff, or, at worst, not entirely diligent about determining the identify of the guards, but it can hardly be said that "strategic choice" was the driving force behind respondent's litigation behavior.

[9] As amici for respondent explain, private prisons are exempt from much of the oversight and public accountability faced by the Bureau of Prisons, a federal entity.  See, e.g., Brief for Legal Aid Society of the City of New York as Amicus Curiae 8-25.  Indeed, because a private prison corporation's first loyalty is to its stockholders, rather than the public interest, it is no surprise that cost-cutting measures jeopardizing prisoners' rights are more likely in private facilities than in public ones.

[10] See also ante, at 75, 151 L Ed 2d, at 461 (Scalia, J., concurring) (arguing that Bivens is a "relic of . . . heady days" and should be limited, along with Carlson v Green, 446 US 14, 64 L Ed 2d 15, 100 S Ct 1468 (1980), and Davis v Passman, 442 US 228, 60 L Ed 2d 846, 99 S Ct 2264 (1979), to its facts).  Such hostility to the core of Bivens is not new.  See, e.g., Carlson, 446 US, at 32, 64 L Ed 2d 15, 100 S Ct 1468 (Rehnquist, J., dissenting) ("[T]o dispose of this case as if Bivens were rightly decided would in the words of Mr. Justice Frankfurter be to start with an 'unreality'").  Nor is there anything new in the Court's disregard for precedent concerning well-established causes of action.  See Alexander v Sandoval, 532 US 275, 294-297, 149 L Ed 2d 517, 121 S Ct 1511 (2001) (Stevens, J., dissenting).

(Lasi) Legal Assistance for State Institutions

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT A

IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

Case Number: 01-C-10-034739 OC

Asemani Vs The Islamic Republic Of Iran, Et Al

To: The Islamic Republic Of Iran
    The Interest Of Islamic Republic Iran
    2209 Wisconsin Ave
    Washington,DC 20007

JUDGMENT

This matter having been decided by:

          A Judge;

          With Judge W. Timothy Finan presiding,
          it is this  22nd Day of July, 2016

ORDERED AND ADJUDGED THAT:

(_)  The complaint is dismissed without leave to amend.

(X)  **Judgment in favor of:**  Billy G. Asemani


     **And Against:**  The Islamic Republic of Iran


     (X)    in the sum of  $4,000,000.00


(_)  All relief is denied.

(_)  Costs are assessed against

_____
W. Timothy Finan

_____
Dawne D. Lindsey
Clerk of the Circuit Court
  of Allegany County

Date Issued: 07/25/16

Copies to:
CC: Ramon Rozas III
    Raymond F Weston Esq

><

# EXHIBIT B

**ATTACHMENT A:** Financial Institutions Holding Assets in the United States that are blocked due to a Nexus with the Government of Iran as of February 29, 2012

Travelex Currency Services Inc.
2121 North 117th Avenue
Suite 300
Omaha, NE 68164
Amount: $0.00

U.S. Bancorp
425 Walnut St.
CN-OH-W11
Cincinnati, OH 45202
Amount: $0.00

U.S. Central
9701 Renner Boulevard
Suite 100
Lenexa, KS 66219
Amount: $0.00

Visa International Service Association
P.O. Box 8999
San Francisco, CA 94128
Amount: $17,700,000.00